NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

UNITED STATES POSTAL SERVICE,
Respondent,

American Postal Workers Union, AFL–
CIO ("National APWU"), Susan Mar-
tinez, Pilar Shalon Livingston, Denine
Latoya Cooper, Roger Mark Bowden,
Brenda Davette Bellamy, Mid–Hudson
Local # 3722 And American Postal
Workers Union, Intervenors.

No. 01–4002.

United States Court of Appeals,
Second Circuit.

Dec. 18, 2001.

**42**

Anna L. Francis, Attorney, National Labor Relations Board (Aileen A. Armstrong, Deputy Associate General Counsel; Arthur F. Rosenfeld, General Counsel; John E. Higgins, Jr., Acting Deputy General Counsel; John H. Ferguson, Associate General Counsel; and Fred. L. Cornnell, Supervisor Attorney; National Labor Relations Board, on the brief), Washington, DC, for Petitioner.

Stephan J. Boardman, Attorney, Civil Practice, United States Postal Service, (Eric C. Scharf, Managing Counsel, Andrew L. Freeman, Esq., and Jonathan I. Saperstein, Esq., on the brief, United States Postal Service), Washington, DC, for Respondent.

Anton G. Hajjar, Esq., Melinda K. Holmes, Esq., O'Donnell, Schwartz & Anderson, P.C., Washington, DC, for National APWU.

Craig D. Robinson, Esq., Brousseau & Robinson, Springfield, MA, for Susan Martinez, Pilar Shalon Livingston, Denine Latoya Cooper, Roger Mark Bowden, Brenda Davette Bellamy, Mid–Hudson–Area Local No. 3722, American Postal Workers Union.

Present WALKER, Chief Judge, NEWMAN, and PARKER, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition for enforcement is GRANTED.

The National Labor Relations Board ("the Board") petitions for enforcement of an order issued against respondent United States Postal Service ("USPS") on September 26, 2000. The Board determined that respondent had violated Section 8(a)(1) and (3) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 151, *et seq.*, by terminating employees for engaging in protected activities. Respondent was ordered, *inter alia*, to cease and desist from the unfair labor practice and to reinstate the employees and make them whole for loss of earnings and other benefits.

This action arises out of the discharge of six transitional employees at the USPS's Mid–Hudson Processing and Distribution Center ("Mid–Hudson facility") for their refusal to work overtime because they had not received at least one hour of advance notice of the need to work overtime. The relationship between the employees and the USPS is governed by a national Collective Bargaining Agreement ("CBA"), which provides for local implementation of the CBA through local memoranda of understanding ("LMOUs") between local unions and management. On September 30, 1992, the local union for the Mid–Hudson facility entered into such a memorandum, which provided as follows with respect to advance notice of overtime work:

> When management determines the need for overtime[,] employees will be given one hour advance notice that they will be required to work, as far as practicable.

In early 1993, the local union filed a grievance with respect to this provision, alleging that the USPS had consistently threatened a transitional employee with discipline if she refused to work overtime with less than an hour's notice. The resulting grievance settlement went a step

further than the local amendment to article 8.1, providing as follows:

At issue in the grievance(s) is the Grievant's contention that Management is violating article 8.1 of the LMOU by not giving the Grievant one hour advance notice, when they are required to work overtime.

Upon full discussion and consideration, it is determined that the grievance(s) is/are settled.

The reason for this decision is that Management will adhere to article 8.1 of the LMOU and give the Transitional employees advance notice of overtime as far as practicale [sic]. Transitional employee [sic] not given prior notice of overtime, and who can not remain for the overtime will not threaten [sic] with discipline for there [sic] actions.

The ALJ found that after this agreement was signed, there were many instances where transitional employees who refused to work overtime when not given one hour's advance notice were not disciplined in any way, and that this understanding was abided by through on or about January 1996.

Thereafter, on February 15, 1996, at approximately 12:45 a.m., USPS Acting Supervisor Lori Huschle informed six transitional employees at the Mid Hudson facility that they had to work two hours of overtime after the completion of their shift, which was scheduled to end at 1:30 a.m. Huschle informed the employees that, if they had a problem with this decision, they should speak to either supervisor Jerry Fiber or another person. When the employees later spoke to Fiber, he gave them a "direct order" to stay overtime and told them to grieve it with the union the next day.

At 1:15 a.m., fifteen minutes before the overtime was scheduled to begin, during the employees' break, they complained to the union steward that they had been ordered to work overtime without one hour's advance notice. Laurie Wagger, a shop steward, took a copy of article 8.1 of the LMOU to show to Fiber and told him that the employees did not have to stay. Fiber disagreed. Wagger then returned to the union office and informed the transitional employees that it was within their rights to leave. All six employees punched out and left the facility at approximately 1:30 or shortly thereafter. The USPS terminated all six employees the next day for their refusal to work overtime.

The Union and each of the six transitional employees filed charges with the Board against the USPS in March 1996. The grievances were referred to arbitration and an arbitration hearing was held on June 11, 1997. The arbitration decision, issued on July 21, 1997, concluded that the grievances in this matter were not arbitrable. Thereafter, a trial before Howard Edelman, ALJ, was conducted; he issued his decision September 28, 1998, finding that the USPS had committed an unfair labor practice and ordering, *inter alia*, the employees' reinstatement. The USPS appealed to the Board. In support of their appeal, the USPS filed exceptions and a supporting brief, and the General Counsel and the Union filed answering briefs. On September 26, 2000, a three-member panel of the Board issued its decision and order. The Board then filed this petition for enforcement.

In response to the Board's application for enforcement, the USPS argues that the Board (1) erred in its determination that the employees actions were protected under the NLRA because the employees engaged in an unlawful work stoppage; and (2) abused its discretion in declining to enforce the arbitrator's award.

■ This court will enforce a Board order "if the Board's conclusion has a reasonable basis in law, and if its factual findings are supported by substantial evidence on the record as a whole." *Sheridan Manor Nursing Home, Inc. v. NLRB*, 225 F.3d 248, 252 (2d Cir.2000) (internal quotation marks omitted).

We conclude that the Board's determination is entitled to deference. It is well established in this circuit that "activities involving attempts to enforce the provisions of a collective bargaining agreement may be deemed to be for concerted purposes." *NLRB v. Interboro Contractors, Inc.*, 388 F.2d 495 (2d Cir.1967). As such, activities to enforce terms of a collective bargaining agreement are protected under the Act's prescription of the right "to engage in ... concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157; *see also id.* § 158(a)(1) & (3). The central inquiry is whether the employees relied on a reasonable interpretation of their contractual rights. *See NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 840, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). In light of the local amendment to article 8.1 and the prior grievance settlement with respect to that provision, there is substantial evidence to support the Board's finding that the employees' actions were taken in reliance on a reasonable interpretation of their contractual rights. As such, the Board's conclusion that the USPS violated Section 8(a)(1) and (3) of the Act by terminating the employees for the exercise of that contractual right is reasonable. We note that the USPS did not present evidence that it was not practical to give one hour's notice.

■ Because it was not raised before the Board, we reject as untimely the USPS's contention that the employees engaged in a "work stoppage" in violation of the national CBA and federal law, both of which prohibit government employees from striking. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the [reviewing] court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.").

■ We review the Board's decision not to defer to an arbitration award for abuse of discretion. *See Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 318, 323 (2d Cir.1981). Under *Spielberg Mfg. Co.*, 112 NLRB 1080, 1082 (NLRB 1955), the Board may decline to enforce an arbitral award unless "the proceedings appear to have been fair and regular, all parties had agreed to be bound, and the decision of the arbitration panel is not clearly repugnant to the purposes and policies of the Act." In this case, the Board affirmed the ALJ's findings, including his express finding that the arbitrator "ignored *City Disposal*, its progeny, and the parties' collective-bargaining agreement," and that "the arbitrator's decision is wrong, repugnant to the Act, and should not be differed." In light of the Board's reasonable determination that the employees were unlawfully discharged and the conclusion that the arbitration award was "repugnant to the Act," the Board did not abuse its discretion.

For the foregoing reasons, the petition for enforcement is GRANTED.